**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VIZ Media, LLC, | |
| Plaintiff, | Case No. 24-cv-12726 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, | Hon. Lindsay C. Jenkins |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 55, Plaintiff, VIZ Media, LLC ("Plaintiff"), by and through its attorneys, Aronberg Goldgehn Davis & Garmisa, respectfully moves for an entry of default and default judgment against the Defendants identified on the Schedule A (collectively, the "Defaulting Defendants) attached hereto for failure to appear, answer, plead or otherwise defend. In support thereof, Plaintiff states as follows:

**BACKGROUND**

Plaintiff is based in California. Plaintiff is the owner of the famous anime-inspired animated series RWBY (pronounced "ruby"). Since its inception in 2013, Plaintiff has marketed, advertised, sold, and offered for sale various goods (collectively, the "RWBY Products"). It is the owner of various trademarks which are federally registered with the United States Patent and Trademark Office and various copyrighted work federally registered with the Copyright Office. ("the RWBY IP"). *See* [1], Ex. A, B. Due to the success of the RWBY Products, infringement has run rampant across various online ecommerce websites, where Defendants have infringed on Plaintiff's valuable RWBY IP, by utilizing counterfeit RWBY IP in connection with the sale,

offering for sale, or distribution of goods or services (the "RWBY Counterfeit Products") through fully interactive ecommerce stores operating under the seller aliases identified in Schedule A (the "Seller Aliases" or "Defendant Internet Stores"). In response to continuing infringement, Plaintiff filed this action against the Defendants listed on Schedule A to the Complaint.

Plaintiff filed its Complaint on December 11, 2024 alleging trademark infringement and counterfeiting (Count I), copyright infringement (Count II) false designation of origin (Count III) and violation of the Illinois Uniform Deceptive Trade Practices act (Count IV) against the Defendants listed on Schedule A to the Complaint. (Dkt. No. 1). The Schedule A included links to ecommerce websites where Defendants offered for sale products that infringed upon Plaintiff's RWBY IP. On December 16, 2024, Plaintiff filed its Motion for Electronic Service of Process (Dkt. No 10). That same day, Plaintiff filed its Motion for Temporary Restraining Order (Motion for "TRO"), which in part requested a total asset freeze of financial accounts connected to the Defendants. The Court granted Plaintiff's Motion for TRO on December 19, 2024 (Dkt. No. 14) and subsequently converted it to a Preliminary Injunction on January 22, 2025. (Dkt. No. 25).

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiff now moves this Honorable Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Plaintiff's Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiff further seeks an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting and 17 U.S.C. § 504(c)(2) for willful copyright infringement against each of the Defaulting Defendants for use of counterfeits of the RWBY IPs on or in connection with the sale, offering for sale, or distribution of products sold through each of the e-commerce stores operating by Defendants. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing RWBY Products, and that all assets in

Defaulting Defendants' financial accounts, including but not limited to those operated by PayPal, Inc. ("PayPal"), eBay Inc. ("eBay"), Walmart Inc. ("Walmart"), Wish.com ("Wish"), and Alipay, as well as any newly discovered assets, be transferred to Plaintiff.

## ARGUMENT

## I. JURISDICTION AND VENUE ARE PROPER IN THIS COURT

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., the Federal Copyright Act, 17 U.S.C. § 101, et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. See Dkt. 1 at ¶¶ 18, 19 and 38; *uBID, Inc. v. GoDaddy Grp., Inc.* 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, e-commerce stores operating under the Seller Aliases, each of the Defaulting Defendants has targeted advertising and sales from Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold Infringing RWBY Products to residents of Illinois. Dkt. 1 at ¶ 18, 19 and 38. Personal jurisdiction exists over Defaulting Defendants since they directly target their business activities toward consumers in the United States, including Illinois. *Id*. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by

operating one or more commercial, interactive e-commerce stores under the Seller Aliases through which Illinois residents can purchase Infringing RWBY Products. *Id*. See *Monster Energy Company v. Wensheng*, 136 F.Supp.3d 897, 904 (N.D. Ill., 2015).

## II.    PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT

Rule 55(a) of the Federal Rules of Civil Procedure states "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

Plaintiff filed its Complaint on December 11, 2024 alleging trademark infringement and counterfeiting (Count I), copyright infringement (Count II) false designation of origin (Count III) and violation of the Illinois Uniform Deceptive Trade Practices act (Count IV). Dkt. 1. The Defendants were served via electronic service of process with the Complaint on January 14, 2025. Dkt. 21. At present, none of the Defaulting Defendants have filed an answer or otherwise pled in this action. Hastings Declaration at ¶ 3. On information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. Id. at ¶ 4. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

## III.    PLAINTIFF HAS MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395,

1399 (7th Cir. 1994). As noted above, Plaintiff served Defendants on August 28, 2023. Dkt. 22. The answer deadline has passed, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. See Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Plaintiff requests an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting and 17 U.S.C.§ 504(c)(2) for willful copyright infringement against each of the Defaulting Defendants for use of counterfeits of the RWBY IP on products sold through the e-commerce stores operating under the Seller Aliases. Plaintiff also seeks entry of a permanent injunction prohibiting Defaulting Defendants from selling Infringing RWBY Products and that all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, eBay, Walmart, Wish, and Alipay, and any newly identified accounts be transferred to Plaintiff.

### A. Trademark Infringement and Counterfeiting

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *See Neopost Industrie B.V. v. PFE Int'l Inc.*, 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citing *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001)).

Plaintiff alleged in its Complaint that its RWBY Trademarks are distinctive, that Defaulting Defendants have knowledge of Plaintiff's rights in the RWBY Trademarks, that Defaulting Defendants are not authorized to use the RWBY Trademarks, and that Defaulting Defendants' use of the RWBY Trademarks causes a likelihood of confusion. Dkt. 1 at ¶¶ 65-69. Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, the Court must

5

accept the allegations contained in Plaintiff's Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiff requests entry of judgment with respect to Count I for willful infringement and counterfeiting of the RWBY Trademarks against the Defaulting Defendants.

### B. False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (citing *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for bringing a trademark infringement claim under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684.

Plaintiff alleged in its Complaint that Defaulting Defendants are using the federally registered RWBY Trademarks without authorization on the Infringing RWBY Products. This creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defaulting Defendants' Infringing RWBY Products by Plaintiff. Dkt. 1 at ¶¶ 73-76. Furthermore, by using the RWBY Trademarks on the Infringing RWBY Products, Defaulting Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing RWBY Products. *Id*. As a result, Plaintiff requests entry of judgment with respect to Count II for willful false designation of origin against the Defaulting Defendants.

### C. Copyright Infringement

Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defaulting Defendants, as alleged in the Complaint, including but not limited to the RWBY Copyrights, including derivative works. [1] at ¶ 77. The RWBY Copyrights are the subject of multiple valid copyright registrations. *Id*. at ¶ 2. Defaulting Defendants had access to the copyrighted work through Plaintiff's normal business activities. *Id*. at ¶ 78. After accessing Plaintiff's work, Defaulting Defendants wrongfully created copies of the copyrighted work without Plaintiff's consent and engaged in acts of widespread infringement. *Id*. Defaulting Defendants further infringed the RWBY Copyrights by making, distributing, and/or causing to be made, derivative works, and by producing and distributing unauthorized reproductions without Plaintiff's permission. *Id*. at ¶ 67. Each Defaulting Defendant, without the permission or consent of the Plaintiff, sold products which infringe upon Plaintiff's RWBY Copyrights. Each Defaulting Defendant has violated, among others, Plaintiff's exclusive rights of reproduction and distribution. The actions of the Defaulting Defendants constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.). *Id*. at ¶ 79.

## IV. PLAINTIFF IS ENTITLED TO MONETARY DAMAGES AND INJUNCTIVE RELIEF

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Pursuant to the statutory damages provision of the

Copyright Act, 17 U.S.C. § 504(c), a plaintiff in a case involving copyright infringement may elect to receive statutory damages of "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the copyright infringement is found to be willful, 17 U.S.C. § 504(c)(2) provides for statutory damages "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, at *11 (N.D. Ill. Apr. 17, 2008).

### A. Statutory Damages are Appropriate

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10; *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). In *Sara Lee*, 36 F. Supp. 2d at 170, the court awarded statutory damages in the amount of $750,000 after estimating the defendants' ill-gotten gains and trebling them to "deter and punish a willful continuous course of infringements and defiance of the judicial process." The *Sara Lee* analysis included seven factors: (1) the profits made by the defendants; (2) the revenues lost by plaintiff; (3) the value of the mark; (4) the deterrent effect on others; (5) whether the conduct was innocent or willful; (6) whether a defendant has cooperated in providing records; and (7) the deterrent effect on the defendant.

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc.*

*v. Ocean Point Gifts,* 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising."). Furthermore, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994).

Additionally, in similar cases involving willful copyright infringement, courts have awarded significant damages, including up to the maximum provided by law. See *Monster Energy Company v. Chen Wensheng, et al.*; No. 1:15-cv-4166 (N.D. Ill. Jul. 27, 2015) (unpublished) (Docket No. [85]) (awarding $50,000 in statutory damages per defendant for willful copyright infringement); *Monster Energy Company v. Xianda Lin, et al.*; No. 1:16-cv-0622 (N.D. Ill. Mar. 14, 2016) (unpublished) (Docket No. [51]) (awarding $150,000 in statutory damages per defendant for willful copyright infringement).

## B. Defaulting Defendants' Willful Counterfeiting Supports the Requested Award

As alleged in Plaintiff's Complaint, Defaulting Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine RWBY Products. Dkt. 1 at ¶ 41-44. Defendants also deceive unknowing consumers by using the RWBY IP without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for RWBY Products. *Id*. It is clear that Defaulting Defendants' counterfeiting was willful. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted

infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.*, 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). As such, knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. In the instant case, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the RWBY IP. Finally, this Court has deemed counterfeiting willful when defendants default. *See Wham-O Holding, Ltd.*, No. 18-cv-05878 (N.D. Ill. Nov. 15, 2018); *Polyblank Designs*, No. 18-cv-5846 (N.D. Ill. Dec. 12, 2018).

**C. A High Statutory Damages Award is Appropriate and Just**

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the Chi-Boy standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *16.

In similar cases involving willful Internet-based counterfeiting, this Court has awarded significant damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others similarly situated from bringing counterfeit goods into commerce; (2) compensating the plaintiff for damages caused by defendant's infringement; and, (3) punishing the defendant appropriately for counterfeiting activities. *See, e.g.,*

*Burberry Limited, et al. v. The Partnerships, et al*, No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. [44, 45]) (awarding $2,000,000 in statutory damages per defendant); *Oakley, Inc. v. The Partnerships, et al.*, No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. [36, 37]) (awarding $2,000,000 in statutory damages per defendant). Given the Court's discretion in determining the appropriate statutory damages award within the statutory limits of 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c)(1), Plaintiff respectfully requests the Court's entry of an award of one hundred thousand dollars ($100,000) per Defaulting Defendant for willful trademark counterfeiting and one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement.

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood v. Quaker Oats Co*., 34 F.3d 1340, 1348 (7th Cir. 1994). For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to, "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005). Plaintiff's request for a high statutory damages award should be given favorable consideration in view of the value of the RWBY IP and brand and the extensive steps being taken by Plaintiff to protect, promote, and enhance it.

## V.     PLAINTIFF IS ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's registered trademark rights in the RWBY IP, including at least all injunctive relief previously

awarded by this Court to Plaintiff in the TRO and Preliminary Injunction. Plaintiff is also entitled to injunctive relief so it can quickly take action against any new e-commerce stores selling Infringing RWBY Products that are found to be linked to Defaulting Defendants. *See Burberry Limited, et al. v. The Partnerships, et al*, No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al*., No. 1:13-cv02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

## VI.     CONCLUSION

For all the reasons set forth above, Plaintiff, VIZ Media, LLC, respectfully requests that this Court enter default and default judgment against the Defaulting Defendants; award statutory damages in the amount of $100,000 for willful trademark infringement pursuant to 15 U.S.C. § 1117(c); award one hundred thousand dollars ($100,000) per Defaulting Defendant for willful copyright infringement, pursuant to 17 U.S.C. § 504(c); and enter a permanent injunction order prohibiting the Defaulting Defendants from selling the Infringing RWBY Products, and transferring all assets in Defaulting Defendants' financial accounts to Plaintiff.

Dated: February 13, 2025                                      Respectfully submitted,

/s/ *Sofia Quezada Hastings*
Sofia Quezada Hastings
***One of the Attorneys for Plaintiff, VIZ
Media, LLC***

Matthew De Preter
Sofia Quezada Hastings
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington St. Suite 2800
Chicago, IL 60606
shastings@agdglaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and electronically published on a website to which the Defendants have been directed pursuant to the Service of Process; and emailed to all email addresses identified or provided for Defendants by the Defendants or third-parties.

Dated: February 13, 2025                          Respectfully submitted,

                                                   /s/ *Sofia Quezada Hastings*
                                                   Sofia Quezada Hastings

4886-7565-7103, v. 1